Paul M. Leisher
Peter Landsiedel
LEISHER & LANDSIEDEL P.C.
P.O. Box 18071
Missoula, Montana 59808
(406) 220-6320
paul@LandL.law

Timothy Strauch
Ward E. "Mick" Taleff
Amanda Beckers Sowden
RESOLUTE LAW FIRM PLLC
257 West Front Street, Suite A
Missoula, Montana 59802
(406) 532-2600
tim@mtresolutelaw.com
mick@mtresolutelaw.com
amanda@mtresolutelaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| SHANNON CRAFT, individually and on behalf of others similarly situated, | Cause No: |
| Plaintiff, | |
| vs. | |
| INFINITY MANAGEMENT AND INVESTMENTS LLC, WHITEFISH INVESTMENT GROUP LP, and DOES 1–74, | CLASS ACTION COMPLAINT |
| Defendants. | |

Plaintiff individually and on behalf of all others similarly situated, brings this action against Infinity Management and Investments LLC, Whitefish Investment Group LP, and Does 1–74 (collectively, "Defendants"). Plaintiff's allegations are based upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys.

## INTRODUCTION

1.      "The 1960s and 1970s witnessed a transformation in residential landlord-tenant law, informed by the civil rights movement and a recognition of shelter as a basic human necessity." *Silver v. Rudeen Management Company, Inc.*, 484 P.3d 1251, 1254 (Wash. 2021) (citing Edward H. Rabin, The Revolution in Residential Landlord-Tenant Law: Causes and Consequences, 69 CORNELL L. REV. 517 (1984)).

2.      "While communities across the country endeavored to improve social and economic conditions, rental housing became increasingly regulated during this period, as Congress passed the Fair Housing Act of 1968, [and] the Uniform Law Commission promulgated the Uniform Residential Landlord and Tenant Act of 1972 (URLTA)...." *Silver*, 484 P.3d at 1255 (citing Mary Ann Glendon, The Transformation of American Landlord-Tenant Law, 23 B.C. L. REV. 503, 503-05 (1982)).

3.     Throughout the 1970s, states across the country adopted some variation of the URLTA or a similar statutory scheme that governed the relationship between landlord and tenant and provided protections to tenants from common predatory practices.

4.     Abusive practices surrounding security deposits were among the chief evils the various statutory schemes sought to prohibit and penalize.

5.     The concerns of predatory practices are heightened where the tenants are more vulnerable by virtue of age and diminished economic means.

6.     Infinity Management specializes in managing properties that accept low-income and senior tenants under state and federal subsidy programs such as HUD's Section 8 program and the USDA's Section 515 program.

7.     The low-income demographics that primarily constitute Infinity Management's tenants generally lack access to the resources necessary to recognize they have been charged amounts against their security deposits that are expressly prohibited by law or to enforce their rights under applicable landlord-tenant statutes.

8.     Infinity Management operates 29 apartment complexes across Montana:

Ashley Creek Court Apartments

Aspen Place Apartments

Colorado Village Apartments

Columbia Arms Apartment

Cottages At Edna Court

Courtyard Apartments

Crestview Apartments

Depot Place Apartments

Eagle Apartments

Meadowlark Vista (Ronan)

Maple Street Cottages

Kalispell Senior Apartments

Polson Landing

Skyview Apartments

Spring Creek Apartments 2

Spring Creek Apartments

Sunny Slope Vista Apartments

Superior Commons Apartments

Teakettle Vista II Apartments

Teakettle Vista Apartments

Treasure Manor Apartments

The Riverside Apartments

The Cornerstone

Treasure Manor Apartment

Two Mile Vista Apartments

Two Rivers Apartments

Yellowstone Commons Apartments

Westgate Senior Apartments

Westwind Village Apartments

9.     Infinity Management also manages 26 apartment complexes in Idaho, 14 in California, two in Nevada, two in North Dakota, and one in Oregon.

10.     Defendants have been engaged in a pattern and practice of charging tenants amounts for cleaning and damage charges that are expressly prohibited under the landlord-tenant laws of five out of the six states in which they operate (all but Wyoming, which has no similar statutory scheme).  Specifically, they retain damage deposits from tenants for normal wear and tear to paint and flooring as well as charging additional amounts beyond the security deposits for such normal wear and tear.

11.     Defendants know that few, if any, of their residents will seek legal redress for Defendants' illegal acts and thus that they can extract illegal profits from the most vulnerable members of their communities with impunity.

12.     The amounts illegally charged often cause the total cleaning and damage charges to exceed the security deposits.  Defendants then demand payment of the amounts in excess of the security deposit, and if they don't receive it immediately, send the charges to collections.  This further degrades the financial health of the tenants by impacting their credit, which in turn makes access to credit more difficult and the cost of credit more expensive.

**PARTIES**

13.     Shannon Craft is and at all relevant times was a resident of Flathead County, Montana.

14.     Infinity Management and Investments LLC ("Infinity Management") is an Idaho limited liability company headquartered in Lewiston, Idaho that at all times relevant herein conducted business in Montana.

15.     Whitefish Investment Group LP ("Whitefish Investment") is a Montana limited partnership whose principal  address as listed with the Montana Secretary of State is the same as the address of Infinity Management.  Whitefish Investment owns the Colorado Village Apartments located in Whitefish, Montana.

16.     Defendants Doe 1–74 are the owners of the other apartment complexes managed by Infinity Management in Montana, Idaho, California, Nevada, North Dakota, and Oregon.  To the extent that Infinity Management acts as an agent for these owners, this Complaint constitutes actual notice to them of the

claims alleged herein for purposes of any relation back of any subsequent amended complaint.

## JURISDICTION AND VENUE

17.    Jurisdiction is proper under 28 U.S.C. § 1332(d)(2).  The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which a member of a class of plaintiffs is a citizen of a State different from a defendant.

18.    Venue is proper because the majority of the events giving rise to this Complaint occurred in Montana.

19.    Infinity Management operates 29 apartment complexes in Montana, more than in any other state.

## GENERAL ALLEGATIONS

20.    Shannon Craft rented an apartment at the Colorado Village Apartments in Whitefish, Montana, for approximately 2.8 years.

21.    Whitefish Investment Group owned Colorado Village Apartments and Infinity Management managed them during the entirety of Craft's tenancy there.

22.    Craft moved out of the apartment complex at the beginning of April 2023.

23.    On April 18, Infinity Management sent her a list of move-out charges that indicated that the amounts in the enclosed documents were estimates only and that a "final Security Deposit Disposition" would be sent later:

This letter is being sent concerning your recent tenancy at   COLORADO VILLAGE APARTMENTS
When you left, there were costs associated with your tenancy that you have been charged with and after deducting the deposit you provided when you became a tenant, an estimated balance due to the apartment project remains in the amount of $   $635.00   . This is an estimated amount only.

The final Security Deposit Disposition will be sent as soon as all the work is completed, and we have a final amount calculated.  Please see the attached copy of the Estimated Security Deposit Disposition form for the calculations showing how the estimated balance was determined.

Property
Manager    *Jennifer Niles*                               Date  4-18-23

24.    Included in the moveout documents sent to Craft was a standardized price sheet Defendant Infinity Management uses for determining the amounts it will charge tenants for specific cleaning and repair items upon move out titled "Move Out / Repair Cost Schedule."  The sheet lists minimum amounts that Infinity Management will charge and states, "If Owner incurs a higher cost for cleaning, repairing or replacing an item, you will be responsible for paying the higher cost."

INFINITY MANAGEMENT
& INVESTMENTS, LLC

MOVE OUT / REPAIR COST SCHEDULE                    REV: 03/2023
If Owner incurs a higher cost for cleaning, repairing or replacing an item,
you will be responsible for paying the higher cost.

25.     As shown in the image below, the Move Out / Repair Cost Schedule lists three options for paint, "Full Painting," "Full Painting with Kilz"[1] and "Touch Up Paint."  For each of these three options, there are set prices for 1 bedroom, 2 bedroom, 3 bedroom, and 4 bedroom units.  Then, there is a listed number of years the tenant occupied the unit and an explanation that states the painting charged for painting "is calculated at a rate of 10% discount per year beginning with 1+ years in unit if normal W&T[.]"

26.     Craft was charged $260 dollars for touch-up paint based on 2.811 years in a 2-bedroom unit.

27.     Another section of the Move-Out Price Sheet lists set prices for carpet cleaning, depending on the number of bedrooms in the unit:

---

[1] Kilz is a brand of primers and paints that block heavy odors and stains.

28.    Craft was charged $180 for carpet cleaning.

29.    Between April 18, 2023, and August 28, 2023, Craft did not receive the promised "final Security Deposit Disposition."

30.    On August 28, 2023, Craft received a phone call from a collection agency stating that she owed Colorado Village Apartments $635.00 plus interest.

31.    After leaving three voicemails for staff at Colorado Village Apartments, Craft received paperwork identical to the paperwork Infinity Management sent on April 18, 2023, and also dated April 18, 2023, except that the documents now stated the amounts listed were "Finale [sic]" amounts, rather than estimates, and were now due.

32.    The amount in collections appears on Craft's credit report and has negatively impacted her credit score.

## CLASS ALLEGATIONS

33.    **Class Definition**: Plaintiff brings this action pursuant to Federal Rules of Civil Procedure Sections 23(b)(2), 23(b)(3), and 23(c)(4), on behalf of herself and the Proposed Class defined as follows:

    a.    **Normal Wear and Tear Class.** All residential tenants of any property managed by Defendant Infinity Management who—within the limitations period—were charged any amounts for normal wear and tear that are prohibited by state law.  Even if charging for normal

wear and tear is not prohibited by state law, the amounts charged were in excess of the actual costs.

34.     The following people are excluded from the Proposed Class: (1) any Judge or Magistrate presiding over this action and members of their judicial staff and immediate families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

35.     Plaintiffs reserve the right under Federal Rule of Civil Procedure 23 to amend or modify the Proposed Class to include a broader scope, greater specificity, further division into subclasses, or limitations to particular issues. Plaintiffs reserve the right under Federal Rule of Civil Procedure 23(c)(4) to seek certification of particular issues.

36.     The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met in this case.

37.     The Fed. R. Civ. P. 23(a) elements of Numerosity, Commonality, Typicality, and Adequacy are each satisfied.

38.    **Ascertainability**: Membership of the Proposed Class is defined based on objective criteria, and individual members will be identifiable from Defendants' documents that record move-out charges levied against tenants.

39.    **Numerosity**: The precise number of the members of the Proposed Class is not available to Plaintiff, but Plaintiff's counsels' investigations and estimations indicate the following: (a) Infinity Management operates at least 2,000 individual apartment units, (b) various publicly available sources place the average length of stay for a residential tenant at 2–3 years. Based on those two data points, and given a limitations period of at least two years, the class size is necessarily larger than 1,000 people.  Hence, individual joinder is demonstrably impracticable.

40.    **Commonality**: The following questions of law and fact are common to all members of the Proposed Class:

a.  Whether Infinity Management charges tenants who are moving out for damages caused by normal wear and tear?

b.  Whether charging for normal wear and tear violates state law?

c.  Whether the charges reflect actual costs?

d.  Whether state law permit landlords to charge amounts in excess of actual costs for cleaning and damage?

41.     **Typicality**: Plaintiff's claims are typical of the Proposed Class.  Like all other Proposed Class Members, Plaintiff was charged for normal wear and tear, and the amounts charged were in excess of actual costs.

42.     **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Proposed Class Members.  Plaintiff's claims are made in a representative capacity on behalf of the Proposed Class Members.  Plaintiff has no interests antagonistic to the interests of the other Proposed Class Members.  Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the Proposed Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the Members of the Proposed Class.

43.     **Predominance**: Questions of law and fact common to the claims of Plaintiff and Proposed Class Members predominate over any questions that may affect individual Proposed Class Members.  Common questions and/or issues for Proposed Class members include the questions listed above in **Commonality**.  The only potential question of law or fact that will vary from one Proposed Class Member to the next is the amount of compensatory damages.  However, given that the compensatory damages are all economic and are clearly described in Defendants' own documents, significant factual disputes over the amounts are unlikely.

44.     **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable.  The Proposed Class Members, being predominantly if not entirely low-income, typically cannot afford to hire an attorney at an hourly wage. Even where state law allows for the recovery of attorney's fees, the fees are discretionary, and few attorneys will take the individual cases on a contingent hourly basis when it is not guaranteed the Defendants will be ordered to pay their fees and their client cannot afford to pay them.  Moreover, the Proposed Class Members risk having to take time off work they cannot afford to miss if they pursue claims *pro se*.  Meanwhile, the Defendants have ample resources and experience hiring counsel to address landlord-tenant disputes.  The Proposed Class Members tend to know this, and given the relatively small amounts involved, the prospect of litigating against wealthier, more litigation savvy defendants tend to discourage Proposed Class Members from pursuing claims for excess charges to their security deposit.  Thus, Defendants' misconduct will go unchallenged in the vast majority of cases unless a class is certified.  Even if Proposed Class Members were positioned to pursue individual litigation, such an approach would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the need to relitigate common issues anew in each individual case.  By contrast, a class action presents far fewer management

difficulties and provides the benefits of consistent adjudication, economy of scale, and comprehensive supervision by a single court.  Economies of time, effort, and expense will be enhanced, and uniformity of decisions ensured.

45.    Even if the Proposed Class Claims are not certified, the common issues are appropriate for certification under Rule 23(c)(4) because their resolution would significantly advance the disposition of individual Proposed Class Members' claims against Defendants.

## COUNT I—STATUTORY VIOLATIONS

46.    Plaintiff incorporates the preceding paragraphs here.

47.    Cleaning and damage charges for ordinary wear and tear are expressly prohibited by statute in Montana and in all the other states in which the Proposed Class members reside: California, Idaho, Nevada, North Dakota, and Oregon.

48.    Defendants violated these statutes by charging Plaintiff and other Proposed Class Members for ordinary wear and tear.

49.    Plaintiff and Proposed Class Members suffered damages as a result of those statutory violations in an amount equal to the illegal charges.

## COUNT II—DECLARATORY AND INJUNCTIVE RELIEF

50.    Plaintiff incorporates the preceding paragraphs here.

51.    A controversy exists between Plaintiff and the Proposed Class Members on one side, and Infinity Management and Defendant Does 1–74

on the other, over whether the charges for paint and flooring Defendants have levied against tenants who have moved out are lawfully recoverable by Defendants and represent actual costs incurred by Defendants.

52.    Plaintiff seeks a declaration that the amounts Defendants charged her and other Proposed Class Members for normal wear and tear are not owed to Defendants.

## PUNITIVE DAMAGE ALLEGATIONS

53.    Plaintiff incorporates the preceding paragraphs here.

54.    Infinity Management is a sophisticated property manager specializing in managing properties that qualify for state and federal subsidies because they cater to low-income tenants.  Whitefish Investment Group and Defendants Does 1-74 are sophisticated property owners and real estate investors who have owned multiple apartment buildings.

55.    Defendants' charges for amounts prohibited by statute from charging were made with actual fraud or actual malice.

56.    Defendants deliberately acted with conscious or intentional disregard for the high likelihood their conduct would cause financial injury to their tenants.

57.    Alternatively, Defendants deliberately acted with intentional disregard for the high likelihood of financial injury to their tenants.

58.     Defendants prey on the poor and the elderly knowing they are least able to hold Defendants accountable for their illegal actions.  Defendants know charges for ordinary wear and tear are illegal, and they know their tenants are the members of their communities least able to afford to pay those charges.  They expect, however, that their tenants lack the sophistication and resources to hold them accountable for the illegal charges.

59.     Even if Defendants were ignorant of their legal obligations prior to this Complaint, that indicates only that Defendants cared too little about their tenants' rights and their obligations to their tenants to learn what they are.

60.     Defendants not only know they cannot legally charge for normal wear and tear, they send any unpaid amounts to collections, despite knowing the tenants have not paid because they cannot afford to pay amounts they do not owe.

61.     Defendants send confusing and contradictory messages about "estimated" amounts due and "finale [sic]" amounts due to further muddy the waters and make it more difficult for tenants who move out to discern how much they are being charged and by when they must pay to avoid being sent to collections.

62.     For all these reasons, Defendants are liable for punitive damages.

//

//

## PRAYER FOR RELIEF

Plaintiff, on her own behalf and on behalf of the Proposed Class, prays that the Court:

a. Certifies this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. Appoints Plaintiff to represent the Class;

c. Appoints undersigned counsel to represent the Class;

d. Awards compensatory damages to Plaintiffs and the Class members against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, but no less than $5,000,000, including interest thereon;

e. Awards statutory (including treble damages, attorneys' fees, and prejudgment interest, where appropriate) damages to Plaintiff and the Class members against Defendants;

f. Awards nominal damages to Plaintiffs and the Class members against Defendants;

g. Orders non-restitutionary disgorgement of all profits that were derived, in whole or in part, from Defendants' conduct;

h. Award punitive damages to Plaintiffs and the Class members against Defendants;

i.  For all Counts, permanently restrain Defendants, and their officers, agents,

servants, employees, and attorneys, from the conduct at issue in this action,

and award all other injunctive and equitable relief deemed just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all issues triable by jury.

DATED this 30th day of January 2024.

LEISHER & LANDSIEDEL P.C.

/s/ Paul Leisher
Paul M. Leisher

RESOLUTE LAW FIRM PLLC

/s/ Timothy Strauch
Timothy Strauch